IN THE UNITED STATES DISTRICT COURT FOR #397
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRA T. JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 cv 10158 |
| | ) | Judge Gottschall |
| WHELAN SECURITY OF ILLINOIS, INC. | ) | |
| and HEALTH CARE SERVICE | ) | |
| CORPORATION ILLINOIS STATE | ) | |
| PAC, NFP d/b/a BLUE CROSS AND BLUE | ) | |
| SHIELD OF ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO HCSC'S MOTION TO DISMISS
HER THIRD AMENDED COMPLAINT**

Now comes the Plaintiff, Terra T. Jordan, by her attorneys, Robert Marc Chemers and Richard M. Burgland, of Pretzel & Stouffer, Chartered, and in response to the motion filed by Defendant Health Care Service Corporation Illinois State PAC, NFP, d/b/a Blue Cross and Blue Shield of Illinois, to dismiss Plaintiff's third amended complaint, states as follows:

INTRODUCTION

As a threshold matter, there are only two named defendants in this case: Whelan Security of Illinois, Inc. ("Whelan"), and Health Care Service Corporation Illinois State PAC, NFP d/b/a Blue Cross and Blue Shield of Illinois ("HCSC"). Despite this fact, Blue Cross Blue Shield of Illinois ("BCBSI") purports to be a defendant, moving jointly with HCSC for this Court to dismiss all claims against it (Doc. #40, 41). Plaintiff anticipates that counsel for HCSC simply overlooked the fact that BCBSI is no longer a named defendant.[1] Indeed, only HCSC moved for additional time

---

[1] On May 2, 2013, Plaintiff, acting *pro se*, filed her Amended Complaint against Blue Cross Blue Shield of Illinois. See Doc. #18. However, on June 19, 2013, Plaintiff, through her court-appointed counsel, filed a Third Amended Complaint against Whelan and HCSC (Doc. #29). The Electronic Civil Docket shows

to respond to Plaintiff's third amended complaint (Doc. #31).

If BCBSI is now claiming to be a defendant, its motion to dismiss is untimely under Federal Rule of Civil Procedure 12(a) and has been filed without leave of Court. Fed. R. Civ. P. 12(a). Because Plaintiff believes that BCBSI's participation was merely an oversight by counsel for HCSC, Plaintiff will respond to the motion to dismiss as if *only* HCSC filed it. To the extent BCBSI claims to be joining in HCSC's motion, Plaintiff seeks leave of this Court to file a supplemental response addressing BCBSI's contentions.

Regarding the merits of HCSC's motion, HCSC makes the following assertions: Count II of Plaintiff's third amended complaint should be dismissed because it exceeds the scope of Plaintiff's Charge with the Equal Employment Opportunity Commission ("EEOC") (Doc. #41, p. 4–5); Count IV of Plaintiff's third amended complaint should be dismissed because it is untimely (Doc. #41, p. 5–7); Count VI of Plaintiff's third amended complaint should be dismissed because Section 1981 does not recognize color discrimination (Doc. #41, p. 7–8); Counts VIII and X of Plaintiff's third amended complaint should be dismissed because Plaintiff fails to state a claim for retaliation under Title VII or Section 1981 and Count VIII exceeds the scope of Plaintiff's EEOC charge (Doc. #41, p. 8–11).

For the reasons that follow, HCSC's motion to dismiss should be denied.

## STANDARD

To avoid dismissal on a 12(b)(6) motion to dismiss, a plaintiff's complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127

---

Defendant Blue Cross Blue Shield of Illinois was "*TERMINATED: 06/19/2013*" and that Health Care Service Corporation Illinois State PAC, NFP d/b/a Blue Cross and Blue Shield of Illinois is now a Defendant.

2

S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court must accept as true the well-pleaded facts in the complaint. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. That is, the complaint's allegations must plausibly suggest an entitlement to relief. *Id.* at 557, 127 S.Ct. 1955. But this does not impose a probability requirement on plaintiffs: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556, 127 S.Ct. 1955 (citation omitted).

## ARGUMENT

### A. Plaintiff's Intake Questionnaire Constitutes a Charge of Discrimination Against HCSC Based on Plaintiff's Color or Race.

A plaintiff filing suit under Title VII must (1) file a timely charge with the E.E.O.C. and (2) receive a right-to-sue letter from the E.E.O.C. See 42 U.S.C. § 2000e(5)(b), (e) and (f); *Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999). Claims not listed on the original EEOC charge cannot come under judicial review unless they are reasonably related to, or grow out of, the allegations in the charge. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000). "An aggrieved employee may not complain to the E.E.O.C. of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). This rule serves two purposes: affording an opportunity for the EEOC to settle the dispute between the employee and employer and putting the employer on notice of the charges against it. *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995), citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

However, to bring a claim, a Title VII plaintiff "need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in [his] complaint." *Taylor v. Western and*

3

*S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)). The test for determining whether allegations in an EEOC charge support a judicial complaint is satisfied "if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek v. Western and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). As a general rule, if a plaintiff asserts a theory of recovery in a judicial complaint that he did not advance in her EEOC charge, then that theory exceeds the scope of the EEOC charge and may not be brought in his federal lawsuit. *See id.* at 503.

Admittedly, Plaintiff's January 17, 2013 Charge of Discrimination against "Blue Cross Blue of Illinois" does not include allegations of discrimination based on Plaintiff's race or color. Those allegations are limited to discrimination based on Plaintiff's sex and retaliation (Doc. #18, p. 6). But this is no reason to dismiss Plaintiff's complaint, where on an Intake Questionnaire which Plaintiff submitted in connection with her initial Charge with the EEOC, she specifically identified HCSC as an organization that discriminated against her on the basis of race or color (Doc. #18, p. 7–9).[2] To be sure, when asked what was the reason (basis) of her claim of employment discrimination, Plaintiff checked the boxes for "Race," "Sex," and "Color" and then went on to identify James Keathley ("Keathley") as the person responsible for the alleged acts of discrimination based on her race or color (Doc. #18, p. 9, Sec. 5. A., B.; Sec. 6).

In her third amended complaint, Plaintiff alleges that HCSC and Whelan functioned as co-

---

[2] In Section 2. of Plaintiff's Intake Questionnaire, she indicated that "Blue Cross Blue Shield of Illinois[]" and "Whelan Security" were the two organizations that discriminated against her (Doc. #18, p. 7–8). Plaintiff's identification of BCBSI is akin to identifying HCSC as a discriminating organization, because Plaintiff has alleged in her Third Amended Complaint that HCSC is a large health insurer doing business as and operating through BCBSI (Doc. #29, p. 3).

4

employers, that HCSC managers had the power to choose employees to be hired or fired, and that HCSC would direct Whelan to execute employment decisions (Doc. #29, p. 5). Plaintiff also alleges that on a day-to-day basis, she reported to managers from both Whelan and HCSC, including Keathley, who was a deputy supervisor of HCSC corporate security (Doc. #29, p. 7–11). These allegations—taken as true for purposes of this motion—confirm that Plaintiff's Intake Questionnaire sufficiently identified HCSC as an organization that discriminated against her on the basis of her race or color.

> The Seventh Circuit has recognized that:
>
> Although a plaintiff who signs a formal administrative charge generally is limited to pursuing allegations included in that submission even if the agency was given additional information during the intake process, *Novitsky v. Am. Consulting Eng'rs*, 196 F.3d 699, 702 (7th Cir. 1999), it is an open question in this circuit whether a pro se plaintiff is bound by a formal charge if critical information supplied to the agency was omitted, *id*. at 703 at 703 (Rovner, J., concurring); see also *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1101-02 (9th Cir. 2002) (disagreeing with Novitsky and holding that plaintiff will not be bound by narrower charge drafted by EEOC or state agency if agency employees "distorted her claims when transferring allegations from an intake questionnaire onto the charge form"). Although the Supreme Court has held that in some circumstances even an intake questionnaire can constitute a charge of discrimination, see *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 401-405, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008) (concluding that intake questionnaire accompanied by detailed six-page affidavit explaining basis for claim and requesting agency to take action constituted charge of discrimination in absence of a formal charge); *E.E.O.C. v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597-98 (7th Cir. 2009), the Court has not addressed the situation where the plaintiff has signed a formal charge of discrimination that narrows the allegations presented to agency officials.

*Wojtanek v. Pactiv LLC*, 492 Fed. Appx. 650, 652–53 (7th Cir. 2012).

Bearing in mind that most EEOC charges are completed by laypersons rather than by lawyers (this case being no exception), and that a Title VII plaintiff is granted significant leeway in that she

5

need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint (*Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)), this Court should find that Plaintiff's Intake Questionnaire constituted a charge of discrimination against HCSC such that Plaintiff's claims of race-based or color-based discrimination against HCSC in Count II of her third amended complaint do not exceed the scope of her formal charge against HCSC.

In *Holowecki*, the Supreme Court considered whether a completed EEOC intake questionnaire and affidavit submitted by the plaintiff constituted a valid "charge" for purposes of the timeliness of the lawsuit. The Court ultimately found that the intake questionnaire and attached six-page affidavit met the requirements of a charge. *Holowecki* at 1159–60. Reaching this conclusion, the Court held that a filing with the EEOC constitutes a charge if it contains the information required by the agency's regulations and can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 1157–58. In that case, the plaintiff made an explicit request in the affidavit attached to her intake questionnaire, asking the agency to "please force Federal Express to end their age discrimination . . . ." *Id.* at 1159.

However, the Supreme Court did not require an explicit request for action; rather, it explained that the filing "must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes . . . ." *Holowecki* at 1158. The Court observed that the ADEA, like Title VII, "sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process. The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." *Id.* (quotations and citations omitted).

6

Therefore, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* at 1160. Acknowledging this standard might permit a wide range of documents to be classified as charges, the Court stated that such an approach is consistent with the practice of construing *pro se* litigants' pleadings liberally in the context of formal litigation. *Id.* at 1158.

The fact that the EEOC never acted on the questionnaire and her employer never received notice of it did not preclude the *Holowecki* Court from construing the plaintiff's intake questionnaire and attached affidavit as a charge. *Id.* at 1158–59, 1160. The Court said that "[i]t would be illogical and impractical to make the definition of a charge dependent upon a condition subsequent over which the parties have no control." *Id.* at 1159.

So too here. Although Plaintiff did not explicitly request that the EEOC take action to protect her rights, her answers on the intake questionnaire express her firm conviction that she was treated in a discriminatory manner by HCSC and can reasonably be construed as requesting the EEOC to act. Plaintiff not only advised the EEOC that she had been discriminated against by "Blue Cross Blue Shield of Illinois[]," but also stated that a BCBSI supervisor, namely, Keathley, was a person responsible for the discrimination (Doc. #18, p. 8–9). All of this suggests that Plaintiff wanted the EEOC "to activate its machinery," not that she "ha[d] questions about [her] rights and simply want[ed] information." See 128 S. Ct. at 1157–58. This construction is consistent with the Supreme Court's directive that a filing should be interpreted in a way which protects employee rights. *Holowecki,* 128 S. Ct. at 1160. Accordingly, Plaintiff's Intake Questionnaire constitutes a charge of discrimination based on sex, color and race against HCSC, and HCSC's motion to dismiss Count II should be denied.

7

B.  Count IV of Plaintiff's Third Amended Complaint is Timely.

As explained in the previous section, Plaintiff's Intake Questionnaire amounted to a charge of discrimination against HCSC not only on the basis of race and color, but also sex. She alleged in the intake questionnaire that she was "the only light skinned African American female full time employee in [her] department. . . that has not transition [*sic*.] back to 300 building and was told [she] would [lose] [her] seniority" (Doc. #18, p. 9, Sec. 6). She additionally alleged that two African American male security officers, Samuel Sams and Marvin Frazier, were in the same or similar situation as her but were moved back to the 300 E. Randolph building and received additional training (Doc. #18, p. 9, Sec. 8. A., B.).

Subsequently, on January 17, 2013, after she was terminated on the pretext of using a company cell phone for personal use, Plaintiff filed a Charge against HCSC, alleging that during her employment with HCSC, she was denied training and promotions while males with less seniority were trained and promoted and that "subsequent to filing the instant Charge, [she] was falsely accused of wrongdoing, which led to her discharge on August 13, 2012 " (Doc. #18, p. 6). Plaintiff's January 17, 2013 Charge is in effect an amendment to her initial charge against HCSC, therefore, her claims against HCSC in Count IV are not untimely.

"A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b); see also *Edelman v. Lynchburg College*, 535 U.S. 106, 118–19, 122 S. Ct. 1145, 152 L. Ed. 2d 188 (2002) (upholding EEOC's regulation allowing charges which are verified at later date to relate back to the original filing as a valid interpretation of statute).

8

Here, on January 17, 2013, Plaintiff effectively amended her initial charges against HCSC in two respects. First, she added allegations that HCSC retaliated against her for filing a charge of discrimination with the EEOC. Second, and equally important, she clarified and amplified her prior allegations of sex discrimination against HCSC. That is, she alleged that she was denied training that male employees received, and she applied for positions and promotions in a new facility and was not selected, while males with less seniority than Plaintiff were selected (Doc. #18, p. 9). Since Plaintiff's January 17, 2013 charge relates back to the date the EEOC first received the Intake Questionnaire (in September 2011) alleging discrete acts of discrimination against HCSC within the 300-day filing period, Count IV of Plaintiff's third amended complaint is timely and not subject to dismissal.

C.  **Plaintiff's Color Claim under Section 1981 is Cognizable.**

Similar to Whelan, HCSC relies heavily on a decision issued by this District in 1984, namely, *Waller v. Int'l Harvester Co.*, 578 F. 3d 309 (N.D. Ill. 1984), for the proposition that Plaintiff's color-based Section 1981 claim must be dismissed. The Shepard's report for this case reveals two interesting facts: (1) the decision has never been cited by another case, published or unpublished, in this District; and (2) the only other decision that cites to that case, *Walker v. Secretary of Treasury, IRS*, 713 F. Supp. 403 (N.D. Ga. 1989), actually stands for the contrary proposition.

In *Walker*, the Court discussed whether a color-based claim was actionable under Section 1981, specifically, whether the claim was actionable in the light of the Supreme Court's decision in *Saint Francis*. The Court answered this question in the affirmative, reasoning, in pertinent part, as follows:

> The Saint Francis case has definitively spoken on the subject: "we have little trouble

9

> in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory. The Court of Appeals was thus quite right in holding that § 1981 'at a minimum,' reaches discrimination against an individual 'because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens'. It is clear from our holding, however, that a distinctive physiognomy is not essential to qualify for § 1981 protection." 107 S. Ct. at 2028 ... (citations omitted).

*Walker*, 713 F. Supp. at 406. The Court went on to explain that "[a] person's color is closely tied to his ancestry and could result in his being perceived as a 'physiognomically distinctive sub-grouping of homo sapiens', which in turn could be the subject of discrimination. Notwithstanding that proposition, it is not even required that a victim of discrimination be of a distinctive physiognomical sub-grouping, a particularly relevant fact to the case at hand." *Id*.

Furthermore, the *Walker* Court quoted the following passage from *Vigil v. City & County of Denver*, 15 EPD para. 6937 (D.Co. 1977):

> "The key factor in determining whether § 1981 should apply is whether a motivation for the discrimination was the victim's color. Plaintiff is a Mexican-American. Although skin color may vary significantly among those individuals who are considered Mexican-Americans, skin color may be a basis for discrimination against them. We note that skin color may vary significantly among individuals who are considered "blacks" or "whites"; both these groups are protected by § 1981, and § 1981 is properly asserted when discrimination on the basis of color is alleged . . . A particular act of discrimination against a Mexican-American may be motivated exclusively on the basis of the victim's national origin, rather than the victim's color. It may also be true that in certain areas of the United States, Mexican-Americans are subject to discrimination on the basis of national origin, and not on the basis of color. However, we find that, at least in this area, Mexican-Americans are subject to color-based discrimination, and are within the coverage of § 1981.15 Empl. Prac. Dec. (CCH) para. 8000 (emphasis added)."

*Walker*, 713 F. Supp. at 407.

Ultimately, *Walker* rejected the defendant's contention that it is not feasible or within the confines of §1981 to allow a law suit based on the color of a person's skin, *i.e.*, light vs. dark. Reaching this decision, the Court concluded that the defendant's reliance on another case from this District, namely, *Sere v. Board of Trustees University of Illinois*, 628 F. Supp. 1543 (N.D. Ill. 1986), *dismissed on other grounds*, 852 F.2d 285 (7th Cir. 1988), offered in support of the proposition that a black person with dark pigmentation cannot sue a black person with lighter-skinned pigmentation, was misplaced. The Court held that *Sere* predates and was therefore superseded by the *Saint Francis* case, which held that discrimination based on skin color amongst members of the same race was actionable under Section 1981. *Walker*, 713 F. Supp. at 408 n.2. Notably, HCSC also relies on *Sere* for the proposition that Plaintiff's Section 1981 color claim is not actionable (Doc. #41, p. 7–8).[3]

This Court should reject HCSC's invitation to become the first Court to rely on *Waller* or *Sere* for the proposition that Section 1981 does not recognize color discrimination, especially considering those cases have been superseded by the Supreme Court's decision in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987). HCSC's motion to dismiss Plaintiff's color-based Section 1981 claim should be denied.

> D. **Plaintiff States A Claim for Retaliation under Title VII and Section 1981, and Her Claims do not Exceed The Scope of Her EEOC Charge.**

Courts analyze claims alleging violations of § 1981 in the same manner as claims alleging violations of Title VII. *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 176 (7th Cir. 1996), citing *Pilditch v. Board of Education of City of Chicago*, 3 F.3d 1113, 1116 (7th Cir. 1993).

To establish a prima facie case of Title VII retaliation, a plaintiff must allege: (1) she

---

[3] Although cited by 10 decisions in this District, *Sere* has never been cited for the proposition that a color claim is not cognizable under Section 1981.

11

engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1038 (7th Cir. 1998), citing *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 397 (7th Cir. 1998).

HCSC contends only that Plaintiff has failed to satisfy the third element of a *prima facie* case for retaliation, because she cannot plausibly allege that her protected activity of filing a Charge with the EEOC on January 17, 2013 was the cause of her adverse employment action of August 13, 2012 (Doc. #41, p. 9–10). The Supreme Court has recognized that under statutes like Title VII, laypersons, rather than lawyers, are expected to initiate the process, thereby making the system accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. *Holowecki* at 1158. As such, the Court has held that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* at 1160.

In this case, construing the content of Plaintiff's January 17, 2013 Charge to protect her rights and statutory remedies calls for the conclusion that the protected activity to which Plaintiff was referring as the cause of her discharge, *i.e.*, her "filing the instant Charge," was not the filing of the January 17, 2013 Charge, but rather the filing of her initial Charge with the EEOC. This makes perfect sense when comparing Plaintiff's responses to the questions on her Intake Questionnaire wherein she identified HCSC as an organization that discriminated against her and she pointed to Heathley—an HCSC supervisor—as an individual responsible for the discrimination (Doc. #18, p. 8–9). It stands contrary to reason that Plaintiff would have intended her allegation to mean that she was discharged in retaliation for filing a Charge with the EEOC, when that Charge was filed after she was terminated. Thus, the only logical interpretation of Plaintiff's allegations is

12

that Plaintiff was referring to her initial filing with the EEOC as the statutorily protected activity in which she engaged that resulted in her retaliatory discharge by HCSC.

Plaintiff has made out a *prima facie* case for retaliation under Title VII and Section 1981, and HCSC's motion to dismiss should be denied.

HCSC's next contention is that Count VIII should be dismissed because Plaintiff exceeds the scope of her Charge by alleging one basis for retaliation (that she filed a Charge against HCSC), then shifting to another basis (that she complained of discrimination) in her third amended complaint (Doc. #41, p. 10). HCSC's primary concern is that Plaintiff's purported bases shifting will "frustrate the EEOC's investigatory and conciliatory role" (Doc. #41, p. 10).

Initially, the only claim that may possibly be considered "outside the scope" of Plaintiff's Charge—and therefore subject to dismissal for that reason—is the allegation in Plaintiff's third amended complaint that she was terminated for complaining of unlawful discrimination. In fact, Plaintiff alleges in both her January 17, 2013 Charge (Doc. #18, p. 6) and third amended complaint (Doc. #29, p. 17–18) that she was discharged by HCSC because she filed a Charge with the EEOC.

Regarding Plaintiff's allegations that she engaged in protected activity by complaining of discrimination and that HCSC violated Title VII because it terminated her in retaliation for complaining of unlawful discrimination, these allegations should not be dismissed because they are reasonably related to the allegations in Plaintiff's January 17, 2013 Charge. See *Sauzek*, 202 F.3d at 920 (holding that claims not listed on the original EEOC charge may come under judicial review if they are reasonably related to, or grow out of, the allegations in the charge). It is axiomatic that filing a Charge with the EEOC is a functional equivalent to complaining of unlawful discrimination. That is, the former necessarily subsumes the latter, thereby forming a reasonable relationship between Plaintiff's allegations that she was terminated in retaliation for complaining of unlawful

13

discrimination and her allegations that she was discharged in retaliation for filing a Charge with the EEOC. Given the reasonable relationship between the allegations in Plaintiff's third amended complaint and the allegations in her January 17, 2013 Charge, Counts VIII and X should not be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should deny HCSC's motion to dismiss and grant such other relief as the Court deems necessary and appropriate.

Respectfully submitted:

Court-appointed Attorneys for Plaintiff

/s/ Robert Marc Chemers
Robert Marc Chemers (#00431508)
Richard M. Burgland (#6289146)
Pretzel & Stouffer, Chartered
One South Wacker Drive, Suite 2500
Chicago, IL 60606
Phone (312)346-1973
Facsimile: (312)346-8242
E-mail: rchemers@pretzel-stouffer.com
rburgland@pretzel-stouffer.com