# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TERRA T. JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 12 C 10158 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| WHELAN SECURITY OF ILLINOIS, | ) | |
| INC. and HEALTH CARE SERVICE | ) | |
| CORPORATION ILLINOIS STATE | ) | |
| PAC, NFP d/b/a BLUE CROSS AND | ) | |
| BLUE SHIELD OF ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Terra Jordan has filed a ten-count third amended complaint against her former employers,

Whelan Security of Illinois ("Whelan") and Health Care Service Corporation Illinois State, NFP

d/b/a Blue Cross and Blue Shield of Illinois ("HCSC"), alleging discrimination on the basis of

her race, color, and gender, and retaliation, in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981. Whelan and HCSC have

both moved to dismiss the complaint in part. For the reasons stated below, both motions are

denied.

## I. BACKGROUND

The following facts are taken from Jordan's complaint, which the court accepts as true

for purposes of a motion to dismiss. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012).

The court also considers Jordan's Equal Employment Opportunity Commission ("EEOC")

charge because the charge is "critical to the complaint and referred to in it," as well as the facts

set forth in Jordan's brief opposing dismissal regarding her EEOC intake questionnaire, as those

facts are "new elaborations [that] are consistent with the pleadings." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 805 (N.D. Ill. 2007) (considering EEOC charge for purposes of motion to dismiss).

Terra Jordan is a light-skinned, African-American woman who lives in Chicago, Illinois. In 1999, Whelan hired Jordan to work as a security guard at office buildings in downtown Chicago. Between 2007 and 2012, she was assigned to work at HCSC's offices located at 300 E. Randolph St. and 111 East Wacker Dr.

In June of 2011, managers at Whelan and HCSC informed Jordan and other security guards that the HCSC offices at 111 E. Wacker would be closing and that employees would need to apply for positions at the 300 E. Randolph location. Jordan applied for the positions, but she did not hear back for several weeks. When she learned from a co-worker that five of her male colleagues had been offered interviews, she complained to her supervisor, Randall Thomas, who shortly thereafter extended an interview to Jordan.

At the interview, Jordan met with Thomas, HCSC deputy supervisor of security James Keathley, and Whelan Vice President Michael Seldin. Thomas told Jordan that they could not hire her because she had not completed a multi-week training course in how to work in a building's control room. Jordan alleges that Whelan and HCSC never offered this training to her but did offer it to dark-skinned African-American men. Thomas told Jordan to keep applying and that eventually she would get a job.

Jordan continued to apply for various positions at the 300 E. Randolph building for several weeks, but she was unsuccessful. She then learned that Thomas had selected another dark-skinned African-American man and a white woman for two of the jobs to which she had

applied.  When she learned this, Jordan decided to file a charge of discrimination with the EEOC.

To file the charge, Jordan first had to complete an intake questionnaire.  The questionnaire included questions about Jordan's personal information, information about her employer, and the basis for her discrimination charge.  Jordan listed Blue Cross Blue Shield of Illinois ("BCBS")[1] and Whelan as the organizations that she believed discriminated against her. She checked boxes indicating that she believed BCBS and Whelan had discriminated against her on the basis of her race, sex, and skin color.  She stated that she believed that BCBS and Whelan had discriminated against her by providing training only to men and by selecting employees for positions with less seniority than her.  She wrote, "I am the only light skinned African American female officer in my Department at 111 E. Wacker facility BCBS 19th Floor."  (Am. Compl. 9, ECF No. 18.)

After Jordan completed the intake questionnaire, someone prepared the EEOC charge itself.[2]  Whoever prepared the charge for Jordan omitted many of the allegations contained in her intake questionnaire.  The charge listed only Whelan as a respondent and did not mention BCBS. It charged Whelan only with sex and color discrimination, despite Jordan having also checked the box for race discrimination.  It described Jordan only as a "light-skinned female," despite Jordan having described herself as a "light-skinned African American female" in response to three different questions on the intake questionnaire.  Nevertheless, Jordan signed the charge, verifying that she had read it and that it was true.

---

[1]     HCSC does business as BCBS, and Jordan knew HCSC by that name.

[2]     The complaint does not explain who prepared the charge for Jordan, but in many cases the charge is prepared by an EEOC employee who has reviewed the intake questionnaire.  *See, e.g.*, *Jackson v. Local 705, Int'l Bhd. of Teamsters, AFL-CIO*, No. 95 C 7510, 2002 WL 460841, at *2 (N.D. Ill. Mar. 26, 2002).

Jordan continued to work for Whelan and HCSC for approximately eleven months after she filed the charge, until August 13, 2012, when she was fired. Jordan's employers told her that she was being fired because she had stolen a company cell phone and used it to make personal calls. Jordan alleges that she was fired because she had filed a charge of discrimination with the EEOC.

After she was fired, Jordan filed a second charge, this time alleging unlawful retaliation. She received a right-to-sue letter on September 21, 2012, and filed a *pro se* complaint in this court on December 19, 2012. On January 17, 2013, Jordan filed a third charge, naming BCBS as the respondent and alleging sex discrimination and retaliation. She received a right-to-sue letter on January 25, 2013, and amended her *pro se* complaint on February 25, 2013, to name BCBS as a defendant.

Once an answer to the complaint had been filed, the court appointed counsel for Jordan. With the assistance of counsel, Jordan then filed a third amended complaint on June 19, 2013. The third amended complaint named Whelan and HCSC as defendants and alleged five counts against each of them: (i) race/color discrimination under Title VII; (ii) gender discrimination under Title VII; (iii) race/color discrimination under 42 U.S.C. § 1981; (iv) retaliation under Title VII; and (v) retaliation under 42 U.S.C. § 1981.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must

give enough details about the subject-matter of the case to present a story that holds together.").

For purposes of the motion to dismiss, the court takes all facts alleged by the claimant as true and

draws all reasonable inferences from those facts in the claimant's favor, although conclusory

allegations are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212

(7th Cir. 2011).

### III. ANALYSIS

**A.  Scope of the EEOC Charge**

####    1.  Title VII Race Discrimination Claim

Both defendants argue that Jordan's Title VII race discrimination claim must be

dismissed because that claim was not included in her EEOC charge.  In general, a Title VII

plaintiff may not bring claims in a lawsuit that were not included in an EEOC charge.  *Cheek v.

W & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  This rule serves two purposes: (1)

permitting the EEOC to investigate claims, so that there will be an opportunity before the

plaintiff files suit "to settle the dispute through conference, conciliation and persuasion"; and (2)

giving the employer "some warning of the conduct about which the employee is aggrieved." *Id.*

Jordan acknowledges that her race discrimination claim was not included in her EEOC charge,

but she argues that she should not be bound by the charge because it left out critical information

that she provided to the EEOC in her intake questionnaire.

In *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, (7th Cir. 1999), the

Seventh Circuit held that the plaintiff could not bring a failure to accommodate claim where the

claim was not included in the EEOC charge, notwithstanding the fact that it was included in the

intake questionnaire.  In *Novitsky*, however, the plaintiff was accompanied by her lawyer when

she signed the charge. *Id.* Judge Rovner's concurring opinion explained why lower courts should not adopt a broad reading of the majority opinion:

> [W]e do not now decide whether an illiterate person or pro se person who signs a charge prepared by the EEOC, which leaves out critical information provided by the claimant to the EEOC in the intake questionnaire, would be similarly bound by the charge. That issue is not before us and is in fact substantially different from the one we decide today. A number of courts have recognized that equitable considerations may require a court to look outside the formal charge where the employee has done all that she can to present the claim to the EEOC, particularly where the failure to include the allegations results from EEOC negligence or misinformation.

*Id.* at 703 (Rovner, J., concurring).

Since *Novitsky*, the Seventh Circuit has maintained that "'[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations.'" *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010) (quoting *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000)). Recently, the Seventh Circuit recognized that *Novitsky* had been criticized by the Ninth Circuit, which held that a plaintiff should not be bound by a narrower charge drafted by the EEOC if its employees "'distorted [the plaintiff's] claims when transferring the allegations from an intake questionnaire onto the charge form.'" *Wojtanek v. Pactiv LLC*, 492 F. App'x 650, 653 (7th Cir. 2012) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1101-02 (9th Cir. 2002)). The *Wojtanek* court noted that it remains "an open question in this circuit whether a pro se plaintiff is bound by a formal charge if critical information supplied to the agency was omitted." *Id.*

The inconsistency between the language of *Novitsky* and these later decisions has sown confusion in the district courts, *see Brindley v. Target Corp.*, 761 F. Supp. 2d 801, 806 (N.D. Ill. 2011), with one court suggesting that the Seventh Circuit has "limit[ed] the holding of *Novitsky . . .* to its facts." *Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793, 798 n.4 (N.D. Ill. 2011). District courts have continued to recognize that equitable factors should be

considered, *see Fantozzi v. Winston & Strawn LLP*, No. 11 C 392, 2011 WL 3704930, at *4 (N.D. Ill. Aug. 17, 2011); *Brindley*, 761 F. Supp. 2d at 806 n.6, and this court has previously allowed a plaintiff to proceed on a claim of racial harassment where the plaintiff signed the charge omitting the claim without the assistance of counsel and the EEOC employee who prepared the charge was at fault for the omission. *See Jackson*, 2002 WL 460841, at *2-3.

This court will not adhere to the broad reading of *Novitsky* that Defendants urge. Jordan may present evidence outside her charge for exhaustion purposes. Relevant factors include whether Jordan had an attorney when she signed the charge, whether the questionnaire was filed contemporaneously with the charge, and whether the EEOC engaged in inequitable conduct. *See Fantozzi*, 2011 WL 3704930, at *4. Although Jordan's complaint does not address whether these equitable factors are present here, Jordan was not required to anticipate affirmative defenses in her complaint. *McCauley v. Akal Sec., Inc.*, 833 F. Supp. 2d 864, 867 (N.D. Ill. 2011). Thus, the motion to dismiss is denied, but Defendants may renew their argument in their summary judgment briefing after discovery has been completed.

### 2. Title VII Race, Color, and Sex Discrimination Claims against HCSC

HCSC moves to dismiss Jordan's Title VII race, color, and sex discrimination claims against it for the additional reason that HCSC was not named as a respondent in the EEOC charge. Jordan did, however, name BCBS (the name by which she knew HCSC) as a respondent in her intake questionnaire. For the same reasons discussed in the last section, then, the court finds that it would be premature to dismiss these claims against HCSC.

### B. Section 1981 Color Discrimination Claim

Section 1981 provides that "all persons within the jurisidiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed

by white citizens." 42 U.S.C. § 1981(a). Jordan alleges that she was discriminated against on the basis of her color. She claims that her supervisor, Randall Thomas, who is a dark-skinned African-American, did not hire Jordan because she is a light-skinned African-American. Defendants move to dismiss Jordan's § 1981 color discrimination claim, contending that § 1981 does not recognize such a claim.

Defendants rely on *Waller v. Int'l Harvester Co.*, 578 F. Supp. 309 (N.D. Ill. 1984), and *Sere v. Bd. of Trustees of Univ. of Ill.*, 628 F. Supp. 1543 (N.D. Ill. 1986). In *Waller*, the court flatly stated that "Section 1981 applies only to race discrimination, not to discrimination on the basis of color." 578 F. Supp. at 314. The court did not cite any authority to support this proposition, and it appears that no case has ever cited *Waller*'s holding with approval.

In *Sere*, the plaintiff, who was Nigerian and had a darker skin color, argued that his supervisor, who was African-American and had a lighter skin color, discriminated against him. 628 F. Supp. at 1546. The court dismissed the claim, noting that it was well-settled that discrimination on the basis of national origin is not actionable under § 1981. *Id.* The court recognized that "although . . . discrimination based on skin color may occur among members of the same race," the plaintiff had not offered any authority suggesting that § 1981 recognizes a claim for color discrimination. *Id.*

But one year later, in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), the Supreme Court held,

> [W]e have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid. . . . [Section] 1981 at a minimum reaches discrimination against an individual because he or she is genetically part of an ethnically or physiognomically distinctive sub-grouping of homo sapiens. . . [But] a distinctive physiognomy is not essential to qualify for § 1981 protection.

*Id.* at 613.  Following the Supreme Court's decision in *Saint Francis*, lower courts have held that § 1981 *does* recognize discrimination claims based on a person's color.  *See, e.g.*, *Walker v. Sec'y of Treasury, I.R.S.*, 713 F. Supp. 403, 406 (N.D. Ga. 1989) ("A person's color is closely tied to his ancestry and could result in his being perceived as a 'physiognomically distinctive sub-grouping of homo sapiens,' which in turn could be the subject of discrimination.").  The *Walker* court recognized that *Waller* and *Sere* arrived at the opposite conclusion, but it found that those cases were superseded by *St. Francis*.  *See id.* at 408 n.2.  The *Walker* decision has been widely cited by courts that have found that § 1981 recognizes claims based on color.  *See, e.g.*, *Uzoukwu v. Metro. Wash. Council of Gov'ts*, No. 11-CV-391 (RLW), 2014 WL 211937, at *2 (D.D.C. Jan. 21, 2014) ("[C]laims based on color, race and/or ethnicity are actionable under Section 1981."); *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253, 1261 (N.D. Ala. 2002) ("Section 1981, like Title VII, prohibits discrimination on the basis of color, as well as race."); *Franceschi v. Hyatt Corp.*, 782 F. Supp. 712, 722 (D.P.R. 1992) ("[I]ntra-racial discrimination is actionable under the statute.").

The court agrees with the courts that have held that *St. Francis* compels the conclusion that § 1981 encompasses claims of color discrimination.  Defendants' motion to dismiss on this ground is denied.

## C.  Retaliation Claim

### 1.  Whether Jordan Has Stated a Retaliation Claim

HCSC argues that Jordan fails to state a retaliation claim under either Title VII or § 1981.  To make out a *prima facie* claim of retaliation under Title VII or § 1981, a plaintiff must allege that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment

action taken by the employer; and (3) a causal connection exists between the two. *Williams v. Lovchik*, 830 F. Supp. 2d 604, 620 (S.D. Ind. 2011).

Here, Jordan alleges that she "engaged in statutorily protected activity when she complained of discrimination and filed charges with the EEOC alleging that she had been wrongfully discriminated against" (Third Am. Compl. ¶ 140, ECF No. 29); "was terminated based on trumped up allegations of allegedly stealing phone minutes on a company cell phone" (*id.* ¶ 141); and "[f]rom the timing of the events, it is clear that Plaintiff was fired because she complained of unlawful discrimination and filed charges of discrimination with the EEOC" (*id.* ¶ 142). These allegations sufficiently state a claim for retaliation.

HCSC argues that Jordan fails to state a retaliation claim because the charge filed against HCSC on January 17, 2013, states, "Subsequent to my filing the instant Charge, I was falsely accused of wrongdoing, which led to my discharge on August 13, 2012." (Am. Compl. 6.) HCSC emphasizes that the charge alleges retaliation based on the "instant" charge, and observes that it "could not have . . . discharged Plaintiff on August 13, 2012 because of a Charge she filed against [BCBS] . . . on January 17, 2013." (HCSC's Br. 9, ECF No. 41.)

The allegations in Jordan's charge are irrelevant to whether her federal *complaint* states a claim for retaliation. Moreover, it appears that whoever prepared the charge simply misused the word "instant" and meant to allege that Jordan had been retaliated against for filing the initial charge. Because the complaint states a claim for retaliation, HCSC's motion to dismiss on this ground is denied.

## 2. Scope of the EEOC Charge

HCSC also argues that Jordan's Title VII retaliation claim exceeds the scope of the January 17, 2013, EEOC charge. The complaint alleges that HCSC retaliated against Jordan

because she "complained of discrimination *and* filed charges with the EEOC" (Third Am. Compl. ¶ 140 (emphasis added)), but the charge alleges only that HCSC retaliated against Jordan because she filed a charge with the EEOC.

A plaintiff may proceed on claims not explicitly set out in a charge if the claims are "like or reasonably related" to the claims in the charge and could "be expected to grow out of an EEOC investigation of the charge." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (internal quotation marks and citation omitted). "[T]he EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals." *Cheek*, 31 F.3d at 501. "The standard is a liberal one in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985).

Jordan argues that her retaliation claim satisfies the *Cheek* standard. The court agrees. Jordan's charge alleged a retaliation claim. Both the complaint and the charge describe the same conduct (Jordan's firing), and both the complaint and the charge implicate the same individual (Randall Thomas, to whom Jordan complained about discrimination and who was also allegedly responsible for Jordan's firing).

HCSC relies on *Holman v. Revere Electric Supply Co.*, No. 02 C 6351, 2005 WL 638085, (N.D. Ill. Mar. 15, 2005), in which the court noted that "[a]llowing a plaintiff to assert one basis for a retaliation claim in his EEOC charge, and then to shift to another basis for the retaliation claim during subsequent litigation, would frustrate the EEOC's investigatory and conciliatory role." *Id.* at *25 (internal quotations omitted). The *Holman* court reached this conclusion based on the Seventh Circuit's decision in *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473 (7th Cir. 1996). But in *McKenzie*, the Seventh Circuit held only that a plaintiff must include

11

each alleged retaliatory *action* in the charge, not every possible *basis* for that action. *Id.* at 483. Recognizing that *Holman*'s requirement that the charge contain each and every basis for the retaliation is inconsistent with the liberal *Cheek* standard, courts have declined to follow *Holman*, especially where "the EEOC was given information to consider all the possible bases for Defendant's alleged retaliatory acts, including the earlier-filed EEOC charges." *Mitchell v. Elkay Mfg. Co.*, No. 04 C 7808, 2005 WL 3560686, at *4 (N.D. Ill. Dec. 22, 2005). That is the case here, as the EEOC knew that Jordan had complained about discrimination based on her previous charge. The motion to dismiss on this ground is denied.

## IV. CONCLUSION

For the foregoing reasons, the court denies the motions to dismiss. The parties are to appear for a status hearing on April 11, 2014, at 9:30 a.m.

ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 21, 2014